UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OCCIDENTAL HOTELS MANAGEMENT B.V., OPERADORA INTERCONTINENTAL DE RESORTS & HOTELES, S.A., ALLEGRO PALM BEACH N.V., and HOTEL PLAYACAR, S.A. de C.V., <br><br> Plaintiffs, <br><br> vs. <br><br> WESTBROOK ALLEGRO L.L.C., individually and as participation agent, <br><br> Defendant. | ECF CASE <br><br> CASE NO. 05-CV-9547 (LMM) (THK) |
| WESTBROOK ALLEGRO L.L.C., <br><br> Counterclaimant, <br><br> vs. <br><br> OCCIDENTAL HOTELS MANAGEMENT B.V., <br><br> Counterclaim-Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
TO DISQUALIFY JONES DAY AS COUNSEL FOR DEFENDANT WESTBROOK
ALLEGRO L.L.C AND TO ENJOIN KENT RICHEY AND
JONES DAY FROM DISCLOSING CONFIDENTIAL OR PRIVILEGED
INFORMATION OBTAINED DURING THE COURSE OF
<u>MR. RICHEY'S PRIOR REPRESENTATION OF CERTAIN PLAINTIFFS</u>**

**SALISBURY & RYAN LLP**

Patrick P. Salisbury, Esq. (PS-1226)
1325 Avenue of the Americas
New York, New York 10019
T: 212-977-4660
F: 212-977-4668

Attorneys for Plaintiffs, OCCIDENTAL
HOTELS MANAGEMENT B.V.,
OPERADORA INTERCONTINENTAL
DE RESORTS & HOTELES, S.A.,
ALLEGRO PALM BEACH N.V., and
HOTEL PLAYACAR, S.A. de C.V.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

 I. FACTUAL BACKGROUND ........................................................................... 1

  (a) Mr. Richey Signed a Confidentiality Agreement .......................... 4

  (b) Mr. Richey's Involvement in the Aruba Casino Claim ................. 4

  (c) Mr. Richey's Involvement in the Clark Claim ............................... 5

  (d) Mr. Richey's Involvement in the Rogers-Jones Claim .................. 6

  (e) Mr. Richey had Access to Other Relevant Privileged and
    Confidential Information ................................................................ 6

 II. ARGUMENT .................................................................................................... 7

  (a) Mr. Richey must be Disqualified Due to His Prior
    Representation of Plaintiffs ............................................................. 7

  (b) Jones Day Must Also Be Disqualified ........................................... 11

  (c) Mr. Richey and Jones Day Must Also Be Disqualified Under
    DR 5-102 ....................................................................................... 13

  (d) Mr. Richey and Jones Day Should Be Enjoined From
    Disclosing to Any Successor Counsel Plaintiffs' Confidences
    and Secrets .................................................................................... 14

 III. CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

Armstrong v. McAlpin,
   625 F.2d 433 (2d Cir. 1980) ................................................................................ 10

Board of Educ. v. Nyquist,
   590 F.2d 1241 (2d Cir. 1979) .............................................................................. 10

Cardinale v. Golinello,
   43 N.Y.2d 288 (Ct. App. 1977) ......................................................................... 7, 8

Glueck v. Jonathan Logan, Inc.,
   653 F.2d 746 (2d Cir. 1981) ................................................................................ 10

Kassis v. Teacher's Ins. and Annuity Ass'n,
   93 N.Y.2d 611 (Ct. App. 1999) ...................................................................... 11, 12

Mitchell v. Metropolitan Life Ins. Co.,
   2002 U.S. Dist. Lexis 4675 (S.D.N.Y. Mar. 21, 2002) ........................................ 11

Solow v. Grace & Co.,
   83 N.Y.2d 303 (Ct. App. 1994) .................................................................. 7, 8, 11

Tekni-Plex, Inc. v. Meyner and Landis,
   89 N.Y.2d 123 (Ct. App. 1996) ............................................... 7, 8, 9, 10, 11, 14

Ullrich v. Hearst Corp.,
   809 F. Supp. 229 (S.D.N.Y. 1992) ...................................................................... 11

**Statutes**

CPR Canon 9 .................................................................................................................. 7

CPR DR 4-101[b], 22 NYCRR 1200.19(b) ................................................................... 7

CPR DR 5-102[a], NYCRR 1200.21(a) ....................................................................... 13

CPR DR 5-102[b], NYCRR 1200.21(b) ................................................................. 13, 14

CPR DR 5-108[a][1], 22 NYCRR 1200.27(a)(1) .......................................................... 7

CPR DR 5-108[a][2], 22 NYCRR 1200.27(a)(2) .......................................................... 7

**Rules**

Fed. R. Civ. Proc. 26(a) ................................................................................................ 13

By this motion Plaintiffs, OCCIDENTAL HOTELS MANAGEMENT B.V., OPERADORA INTERCONTINENTAL DE RESORTS & HOTELES, S.A., ALLEGRO PALM BEACH N.V., and HOTEL PLAYACAR, S.A. de C.V. ("Plaintiffs"), seek to: (i) disqualify Jones Day as counsel for Defendant, WESTBROOK ALLEGRO L.L.C. ("Defendant"), based on Jones Day's conflict of interest resulting from Jones Day partner Kent Richey's prior representation of certain Plaintiffs[1] and their affiliates in related matters and on the likelihood that Mr. Richey will be a key witness in this case; and (ii) enjoin Mr. Richey and Jones Day from disclosing to Defendant, or any other person, any privileged or confidential information obtained during the course of Mr. Richey's prior representation.

## I. FACTUAL BACKGROUND

Plaintiffs in this case seek damages for misrepresentation and breach of contract resulting from Defendant's failure to indemnify Plaintiffs for certain costs, expenses and liabilities incurred by Plaintiffs as required by the Agreement and Plan of Merger, dated as of April 17, 2000, among Plaintiff Occidental Hotels Management B.V. ("Occidental"), certain of its affiliates, Defendant Westbrook and other entities referenced therein (the "Merger Agreement").

In September 2000, pursuant to the Merger Agreement, Occidental acquired the Allegro group of international hotels ("Allegro Group") from Defendant and related entities for $460 million, in the transaction described below. (*See* Declaration of Claudia Alvarez, dated March 8, 2006 ("Alvarez Dec."), attached hereto at ¶ 2.) The parent company of the Allegro Group at the time was Allegro Resorts Corporation ("ARC"). (Id. ¶ 3.) When the Merger Agreement was signed, and for several years before, Kent Richey was the General Counsel of ARC and was also an officer of many of ARC's affiliates including Plaintiffs (with the exception of Occidental). (Id.) After he resigned as an employee of ARC in April 2000, Mr. Richey remained General

---

[1] Mr. Richey's prior representation involved all Plaintiffs with the exception of Occidental Hotels Management B.V.

Counsel and continued to represent ARC and its subsidiaries through the closing of the merger in September 2000. (Id. ¶ 4.)

Mr. Richey is now a partner at Jones Day, counsel for Defendant in this case. By this motion, Plaintiffs seek to disqualify Mr. Richey and Jones Day from representing Defendant in this matter due to Mr. Richey's prior representation of ARC and Plaintiffs.

Under the Merger Agreement, ARC merged with a subsidiary of Occidental; ARC remained as the surviving corporation (the "Merger"). (Alvarez Dec. ¶ 4.) As a result of the Merger, Occidental owned ARC which, in turn, owned Plaintiff Operadora Internacional de Resorts & Hotels S.A. ("OIH"), Plaintiff Allegro Palm Beach N.V. ("Allegro PB") and Plaintiff Hotel Royal Playacar S.A. de CV. ("Royal"). (Id.) OIH operated the Allegro Bavaro hotel in the Dominican Republic. (Id.) Allegro PB operated the Allegro Palm Beach hotel in Aruba. Royal operated the Royal Hideaway hotel in Mexico. (Id.)

In this lawsuit, Plaintiffs seek:

    (i)    $400,000 in compensation related to amounts paid to settle a claim against OIH by Victoria Clark Alexander ("Clark") who was a guest at the Allegro Bavaro hotel in the Dominican Republic in October 1999 when she claimed she was raped by an employee of that hotel ("Clark Claim");

    (ii)    in excess of $6,000,000 related to the termination a Casino Management Agreement between Crysta Entertainment N.V. ("Crysta") and Allegro PB dated August 1, 1999 ("Casino Contract"), which was terminated by Allegro PB prior to the closing date of the Merger ("Aruba Casino Claim"); and

    (iii)    $130,000 in compensation and related amounts paid to settle a claim against Royal by Pamela Jill Rogers-Jones ("Rogers-Jones") who was injured prior to the Merger in an accident while a guest at the Royal Hideaway Hotel in Mexico ("Rogers-Jones Claim").

As General Counsel of ARC from 1997 through 2000, Mr. Richey was intimately involved in each of these three matters while representing ARC and its subsidiaries, OIH, Allegro PB and Royal. (Alvarez Dec. ¶ 5.) Mr. Richey has now switched sides, and he and his current firm, Jones

Day, represent Defendant Westbrook against Mr. Richey's former clients on the very matters for which Mr. Richey was responsible while he controlled Plaintiffs' legal affairs (except Plaintiff Occidental).

As General Counsel of ARC, Mr. Richey was listed as the fourth highest ranking officer within the Allegro Group following only the Chairman, the Chief Executive Officer and the Chief Financial Officer of ARC as shown on an attachment to the Merger Agreement entitled "Allegro Resorts Corporation – Top 25 Employees." (*See* Attachment VI to the Merger Agreement attached to the Declaration of Patrick P. Salisbury, Esq., dated March 8, 2006 ("Salisbury Dec."), as <u>Exhibit A</u>.) Mr. Richey had been employed by ARC as the General Counsel for three years preceding the Merger. (Alvarez Dec. ¶ 3.)

Mr. Richey was not only General Counsel of the Allegro Group, he was also the Secretary and Vice President of ARC, the sole Managing Director of Plaintiff Allegro PB, a Vice President of Plaintiff OIH, and the Secretary of Plaintiff Royal. (*See* Attachment X to the Merger Agreement entitled "Officers and Directors 2000"attached to the Salisbury Dec. as <u>Exhibit B</u>.) Mr. Richey was also an officer of virtually all ARC affiliated entities. (<u>Id.</u>)

Mr. Richey will be a critical witness in this case regarding all three claims raised by Plaintiffs. He was also intimately involved in the due diligence process prior to the Merger on behalf of Plaintiffs and in the negotiation of the Merger Agreement. (Alvarez Dec. ¶ 6.) Mr. Richey will be a key witness regarding the Merger Agreement, as well as the June 18, 2003 Settlement Agreement between the parties relied on by Defendant as a supposed defense to certain of its indemnification obligations.

Mr. Richey's representation of Plaintiffs did not end with his resignation as an employee of ARC. (Alvarez Dec. ¶ 7.) Subsequently, he continued to represent Plaintiffs and continued to give instructions to ARC's Legal Department representative, Claudia Alvarez, on numerous

operational matters including the Clark Claim, the Aruba Casino Claim and the Rogers-Jones Claim through the date the Merger closed in September 2000. (Id.)

### (a) Mr. Richey Signed a Confidentiality Agreement

Mr. Richey not only represented ARC and the Allegro Plaintiffs, he also signed a Confidentiality Agreement. (*See* Confidentiality Agreement attached to the Salisbury Dec. as Exhibit C.) In this agreement, Mr. Richey agreed that he would not "disclose any confidential information affecting or relating to the business of [ARC] or its subsidiaries …." By switching sides and providing confidential information concerning the Plaintiffs to Defendant, Mr. Richey may well have breached that agreement.

### (b) Mr. Richey's Involvement in the Aruba Casino Claim

While serving as General Counsel of ARC, Mr. Richey personally handled the negotiation of the Casino Contract pursuant to which Allegro PB engaged an outside entity, Crysta, to manage the casino owned by Allegro PB at its hotel in Aruba. (Alvarez Dec. ¶ 8.) Indeed, he signed that contract as Vice President of Allegro PB. (Id.) Mr. Richey was also then a member of the Board of Directors of Allegro PB. (Id.) He directed the negotiations with the casino operator when subsequent disputes arose. (Id.) He also represented Allegro PB in negotiations with third parties which claimed they were entitled to an interest in the Casino Contract. (Id.)

At Mr. Richey's direction, Allegro PB terminated the Casino Contract prior to the Merger. (Id. ¶ 9.) He instructed his direct report, Ms. Alvarez, on the wording of the two termination letters sent by Allegro PB. (Id. ¶ 9.) These termination letters led to the claim by the terminated casino operator against Allegro PB for which Allegro PB now seeks indemnification from Defendant. (Id.) Indeed, the termination of the Casino Contract led to litigation in Aruba, Florida and Texas. (Id.) Mr. Richey was intimately involved in each of those cases through the date of the Merger, and remained involved thereafter. (Id.) His testimony in the Texas case – the only

case that has gone to trial to date – was critical and cited repeatedly by the Texas Appellate Court in its decision against the casino operator.[2] (*See* Opinion in Bright v. Addison, 171 S.W.3d 588 (Tex. App. 2005), dated August 3, 2005, attached to the Salisbury Dec. as Exhibit D.)

Mr. Richey's involvement continued after the Casino Contract was terminated when he discussed the termination of the Casino Contract with the General Counsel of Plaintiff Occidental. (Alvarez Dec. ¶ 10.) He instructed Ms. Alvarez regarding the engagement of outside counsel to represent Allegro PB in the litigation with Crysta and he instructed them in the defense of that case. (Id.) Mr. Richey discussed the case and the documents relating thereto with Ms. Alvarez and the outside counsel of Allegro PB. (Id.) In the course of his duties as General Counsel, Mr. Richey obtained vast amounts of privileged and confidential information from Allegro PB and ARC concerning the Aruba Casino Claim at issue in this case. (Id.)

**(c)** **Mr. Richey's Involvement in the Clark Claim**

Mr. Richey was also directly involved in the Clark Claim. (Alvarez Dec. ¶ 11.) He was General Counsel of ARC when Ms. Clark, a guest at Plaintiff OIH's hotel in the Dominican Republic, claimed she was raped by an employee of OIH in October 1999. Mr. Richey supervised the investigation of that claim. (Id.) He instructed outside counsel when a lawsuit was filed by Ms. Clark. (Id.) He conducted the defense of that case until September 2000 when ARC was sold to Occidental. (Id.) During this time, Mr. Richey was also the Secretary and Vice President of OIH and a member of its Board of Directors. (Id.) Mr. Richey discussed the results of internal investigation with Plaintiffs and outside counsel to OIH. (Id.) Again, Mr. Richey obtained all of the confidential and privileged information that existed relating to the Clark Claim as a result of his role as counsel to OIH. (Id.)

---

[2] Allegro PB was not a party to the Texas case, which related to claims by third parties that the casino operator had deprived them of the opportunity to manage the Aruba Casino.

### (d) Mr. Richey's Involvement in the Rogers-Jones Claim

Mr. Richey resigned as an employee of ARC in April 2000. (Alvarez Dec. ¶ 3.) Despite his resignation, however, he remained General Counsel and continued to represent ARC and its subsidiaries through September 2000 when the merger transaction closed. (Id.) On July 29, 2000, while Mr. Richey remained as General Counsel, Ms. Rogers-Jones was injured in an accident while a guest at the Royal Hideaway Hotel operated by Plaintiff Royal in Mexico. (Id. ¶ 12.) Again, Mr. Richey was privy to all confidential and privileged information concerning the Rogers-Jones Claim. (Id.)

### (e) Mr. Richey had Access to Other Relevant Privileged and Confidential Information

Mr. Richey was a senior officer and General Counsel of ARC from July 1993 through September 2000. (Alvarez Dec. ¶ 3.) He represented ARC before he became General Counsel and after he resigned as an employee. (Alvarez Dec. ¶ 3.) During this period, Mr. Richey was responsible for all of the Allegro Group's legal affairs. (Id.) Moreover, as General Counsel, as well as a senior officer and a member of the Boards of Directors of Plaintiffs OIH, Allegro PB and Royal (not to mention numerous related entities), he had access to all of Plaintiffs' confidential business and financial information. (Id.) He was aware of, and indeed formulated, ARC policy on legal and many business matters. (Id.)

Due to Mr. Richey's prior representation of certain Plaintiffs, he was unquestionably privy to the most sensitive and confidential information about all aspects of the companies' operations. By switching sides and representing Defendant Westbrook, Mr. Richey will make available to Westbrook a wealth of confidential inside information, not only about the three claims at issue here, but also about ARC's policies, procedures, business operations and employees that would not be available had Mr. Richey not been the General Counsel and senior legal advisor to ARC and its subsidiaries for years.

## II. ARGUMENT

**(a) Mr. Richey must be Disqualified Due to His Prior Representation of Plaintiffs**

Mr. Richey signed a Confidentiality Agreement. (See Exhibit C attached to the Salisbury Dec.) Additionally, as an attorney, he owed a fiduciary duty of both confidentiality and loyalty to his former clients. *See, e.g.*, Tekni-Plex, Inc. v. Meyner and Landis, 89 N.Y. 2d 123, 130-132, 674 N.E. 2d 663, 668, 651 N.Y.S. 2d 954, 959 (Ct. App. 1996); Solow v. Grace & Co., 83 N.Y.2d 303, 306 (Ct. App. 1994). The Code of Professional Responsibility (the "Code" or "CPR") imposes a continuing obligation on attorneys to protect their clients' confidences and secrets. Tekni-Plex, *supra* at 130. Even after representation has concluded, a lawyer may not reveal information confided by a former client, or use such information to the disadvantage of the former client or the advantage of a third party. CPR DR 4-101[b], 22 NYCRR 1200.19(b); *see also* CPR DR 5-108[a][2], 22 NYCRR 1200.27(a)(2). An attorney, moreover, "must avoid not only the fact, but even the appearance, of representing conflicting interests." Tekni-Plex, *supra* at 130; Cardinale v. Golinello, 43 N.Y.2d 288, 296 (Ct. App. 1977);CPR Canon 9.

In accordance with these duties, the Code precludes attorneys from representing interests adverse to a former client on matters substantially related to the prior representation. This ethical proscription is set forth in DR 5-108 as follows:

> A. Except with the consent of a former client after full disclosure a lawyer who has represented the former client in a matter shall not:
>
> 1. Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

CPR DR 5-108[a][1], 22 NYCRR 1200.27(a)(1).

Under DR 5-108[A][1], a party seeking disqualification of its adversary's lawyer must prove: (1) the existence of a prior attorney-client relationship between the moving party and

opposing counsel; (2) that the matters involved in both representations are substantially related; and (3) that the interests of the present client and the former client are materially adverse. *See*, *e.g.*, Tekni-Plex, *supra* at 131; Solow, *supra* at 308. "Satisfaction of these three criteria by the moving party gives rise to an irrebuttable presumption of disqualification." Tekni-Plex, at 131; Solow, at 308-09.

By mandating disqualification irrespective of any actual detriment – that is, "even when there may not, in fact, be any conflict of interest' – the rule also avoids any suggestion of impropriety on the part of the attorney. Tekni-Plex, at 131; Solow, at 309; *see also* Cardinale, *supra* at 296.

The three criteria required for disqualification are easily satisfied here. Mr. Richey was the General Counsel of Plaintiffs OIH, Allego PB and Royal. Indeed, prior to becoming General Counsel, Mr. Richey acted as outside counsel to the entities. Thus, he had an attorney-client relationship with these Plaintiffs.

The three claims involved in this case – the Aruba Casino Claim, the Clark Claim and the Rogers-Jones Claim – are the very same matters on which Mr. Richey previously represented Plaintiffs. Finally, the interests of Mr. Richey's former clients – OIH, Allegro PB and Royal – are adverse to the interests of Westbrook, his current client. Plaintiffs seek indemnification for these three claims, and Westbrook denies any indemnity obligation. It is difficult to envision a clearer case of adverse representation of a former client.

This case presents facts virtually identical to those considered by the New York Court of Appeals in Tekni-Plex, 89 N.Y.2d at 123. There, the law firm of Meyner and Landis ("M&L") had initially represented Tekni-Plex, Inc. ("TPI") on various matters, including environmental compliance. Id. at 127. Tang was the controlling shareholder of TPI. Id. Subsequently, TPI was sold in a merger transaction by Tang, who was represented by M&L during the Merger. Id. at

127-28, 133-34.

The merger agreement contained representations and indemnity obligations from Tang to the newly merged TPI ("New TPI") regarding, *inter alia*, environmental matters. Id. at 128. Shortly after the merger, New TPI commenced arbitration against Tang for breach of representations relating to environmental compliance. Id. Tang retained M&L to represent him, and New TPI moved to disqualify M&L based on M&L's prior representation of TPI. Id. at 129.

The New York Court of Appeals held that when control of a corporation passed to a new management in a merger or similar sale transaction, the corporation's authority to assert attorney client privilege likewise passed to the acquiror. Id. at 133. Thus, New TPI was M&L's "former client." Id. at 133-34. The Court also found that a substantial relationship existed between M&L's current and former representation as M&L had represented TPI on environmental compliance issues related to the indemnification claim brought by New TPI against Tang. Id. at 134-35. Thus, the Court found that the current matter and the former matter were substantially related. Id. Accordingly, two of the three prongs for disqualification were established. Id.

Next, the Court found that Tang's and New TPI's interests were adverse because the dispute went beyond the merger negotiations (where Tang and the original TPI had a unity of interest). Id. at 135-36. Instead, the dispute involved issues relating to M&L's prior representation of the company on operational issues, namely environmental compliance. Id. at 136. As to these issues, Tang's interest in denying indemnification was directly adverse to New TPI's interest in obtaining indemnification. Id. As a result, the third prong was also satisfied and M&L was disqualified from representing Tang. Id. The Court of Appeals concluded:

> Under the circumstances, the appearance of impropriety is manifest and the potential conflict of interest is apparent. M&L should therefore be disqualified from representing Tang in the arbitration.

Id. at 136.

Likewise, in the present case, Mr. Richey represented ARC and Allegro PB with regard to the negotiation and performance of the Casino Contract. He then represented Allegro PB when disputes arose with the casino operator under the Casino Contract and in connection with the Aruba Casino Claim that followed. Indeed, Mr. Richey formulated and executed the legal strategy to terminate the Casino Contract, which spawned the litigation in Florida and Aruba for which Plaintiffs now seek indemnification. In addition, Mr. Richey counseled OIH with regard to the Clark Claim, and Royal with regard to the Rogers-Jones Claim. Thus, as in Tekni-Plex, Mr. Richey's representation involved not just the merger, but operational issues where Plaintiffs' and Defendant's interests are adverse. This requires that Mr. Richey be disqualified from further representation of Defendant Westbrook.

Under New York law, motions to disqualify counsel are not granted indiscriminately as that can interfere with a party's right freely to choose counsel and may be interposed for tactical reasons. Board of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). Relief is granted, however, when the facts concerning the lawyer's conduct poses a significant trial taint. Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981); Nyquist, *supra* at 1246. A common risk of trial taint arises "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . thus giving his present client an unfair advantage." Armstrong v. McAlpin, 625 F.2d 433, 434 (2d Cir. 1980) (quoting Nyquist, *supra*), *vacated on other grounds and remanded*, 449 U.S. 1106 (1981).

"The rule against successive representations 'concerns itself with the unfair advantage that a lawyer can take of his former client in using adversely to that client information communicated in confidence in the course of the representation' such as 'knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject and innumerable

- 10 -

other uses.'" Mitchell v. Metropolitan Life Ins. Co., 2002 U.S. Dist. Lexis 4675, *11 (S.D.N.Y. Mar. 21, 2002) (quoting Ullrich v. Hearst Corp., 809 F. Supp. 229, 236 (S.D.N.Y. 1992)).

This is precisely the risk that exists here. The broad access to client confidences and secrets given Mr. Richey due to his role as General Counsel, senior officer and Board member of OIH, Allegro PB and Royal is undeniable. Equally undeniable is the unfair advantage that Mr. Richey and Jones Day can take of Mr. Richey's former clients such as "knowing what to ask for in discovery, which [Allegro] witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject and innumerable other issues." Mitchell, *supra* at 3. The "appearance of impropriety" is striking, and disqualification is mandated.

### (b) Jones Day Must Also Be Disqualified

Plaintiffs' satisfaction of the three-pronged criteria raises an irrebuttable presumption that if Mr. Richey attempts to represent Defendant in this action against Plaintiffs, he would be disqualified. *See, e.g.*, Tekni-Plex, 89 N.Y.2d at 131-132; Solow, 83 N.Y.2d at 308-09. Further, where one attorney is disqualified as a result of having represented a client in an earlier matter while the attorney was at a former law firm or was in-house counsel, and then the attorney subsequently attempts to represent a client against the former client in a substantially related matter, a rebuttable presumption arises that the entirety of the attorney's current law firm must also be disqualified. *See, e.g.,* Kassis v. Teacher's Ins. and Annuity Ass'n, 93 N.Y.2d 611, 617 (Ct. App. 1999); Solow, *supra* at 313 (noting that the Second Circuit created a rebuttable presumption because "there are valid reasons for differentiating between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery"). Here, based on Mr. Richey's disqualification due to his "heavy involvement" in the three matters at issue in this case, a rebuttable presumption automatically arises that his present firm, Jones Day,

must also be disqualified.

In order to rebut the presumption that a "side-switching" attorney's current firm must also be disqualified, "the party seeking to avoid disqualification must prove that any information acquired by the disqualified lawyer is unlikely to be significant or material in the litigation." Kassis, *supra* at 617. In determining "whether the presumption of shared confidences and disqualification has been rebutted, consideration must be given to the particular facts of each case." Kassis, at 617.

Here, given Richey's extensive participation in the very three claims that are the subject of this action, his key role in negotiating and later terminating the Casino Contract on behalf of Allegro PB and his detailed and intimate knowledge of Plaintiff's confidential information and operations gleaned from his years as General Counsel, Defendant's burden in rebutting the presumption that Richey "acquired material confidences [in the course of his prior representation of ARC and Allegro PB] is especially heavy." Id. at 618-19. Indeed, if Mr. Richey discussed the three claims with other involved lawyers at Jones Day or otherwise shared his information, it will be impossible for Jones Day to rebut the presumption of disqualification of the firm. Such sharing is likely as Mr. Richey is a partner at Jones Day and was apparently responsible for bringing this matter to Jones Day due to his prior involvement with Plaintiffs.

To avoid disqualification, Defendant may claim that Jones Day will erect an "ethical screen" or "Chinese wall" so that Mr. Richey will be screened off from all matters at issue in the case. However, the erection of an ethical screen or Chinese wall around a disqualified attorney is not a sufficient basis for avoiding firm disqualification where the presumption of imputed law firm disqualification has not been rebutted. *See, e.g.,* Kassis, *supra* at 617-19. Where, as here, the presumption *cannot* be rebutted because confidential information has already been shared, the creation of any ethical screen or Chinese wall is "inconsequential" and, as a matter of law,

insufficient to avoid disqualification of the entire law firm. (Kassis, at 619).

### (c) Mr. Richey and Jones Day Must Also Be Disqualified Under DR 5-102

Mr. Richey's disqualification is also required under the Code's DR 5-102 – the lawyer as witness rule. That rule provides in pertinent that:

> (a) A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client.

CPR DR 5-102[a], NYCRR 1200.21(a).

Mr. Richey is listed as a person with relevant information in both Defendant's and Plaintiffs' Fed. R. Civ. Proc. 26(a) Initial Disclosures. Indeed, for many factual issues, Mr. Richey will be *the key witness*. This is particularly true with respect to the Aruba Casino Claim where Mr. Richey represented Aruba PB in the original negotiation of that agreement, handled all of the critical discussions with the counterparty, oversaw and directed the termination of the Casino Contract and represented Allegro PB in all subsequent disputes and litigation. His testimony will be central in this matter and highly relevant on the two other claims brought by Plaintiffs. As none of the exceptions in Rule 1200.21 apply, Mr. Richey should be disqualified.

Moreover, Jones Day should also be disqualified under the Code's DR 5-102[b] because Mr. Richey's testimony will be adverse to Defendant. This rule provides that:

> (b) Neither a lawyer nor the lawyer's firm shall accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or another lawyer in the lawyer's firm may be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony would or *might be prejudicial* to the client.

CPR DR 5-102[b], NYCRR 1200.21(b) (emphasis added).

Mr. Richey is listed as a likely witness by both parties and will certainly be called as a witness by Plaintiffs. His testimony will involve, among other things, his orchestration of Allegro

PB's termination of the Casino Contract and his discussions with the representative of the terminated company concerning settlement. In Plaintiffs' view, Mr. Richey's testimony will be adverse to Westbrook because it will establish that ARC terminated the Casino Contract in violation of the Merger Agreement requiring indemnification by Westbrook. Thus, at a minimum, this testimony "might be" prejudicial to Defendant. As a result, both Mr. Richey and his firm should be disqualified under the Code's DR 5-102[b].

### (d) Mr. Richey and Jones Day Should Be Enjoined From Disclosing to Any Successor Counsel Plaintiffs' Confidences and Secrets

Plaintiffs also seek to enjoin Mr. Richey and Jones Day from divulging any confidential information obtained by Mr. Richey concerning the three claims at issue here, or any other confidential or privileged information involving OIH, Allegro PB, Royal or any other Allegro entities previously represented by Mr. Richey.

This issue arose in Tekni-Plex, 89 N.Y.2d at 123, where the Court of Appeals upheld an injunction preventing the disqualified law firm from disclosing to Tang any client confidences or secrets gleaned from their prior representation of the merged entity. That same principle applies in this case and both Mr. Richey and Jones should be similarly enjoined and ordered to return to Plaintiffs any documents containing confidential or privileged information.

### III. CONCLUSION

Kent Richey's prior representation of Plaintiffs OIH, Allegro PB and Royal was long-standing and pervasive. He represented these entities on the very claims at issue here and obtained access to virtually all of the privileged and confidential information held by Plaintiffs concerning these matters. He also signed a Confidentiality Agreement in which he promised not to disclose any information concerning Plaintiffs' business.

On the basis of Mr. Richey's intimate involvement with Plaintiffs, his disqualification – and that of his current firm – is clearly mandated.

Dated: New York, New York
March 9, 2006

SALISBURY & RYAN LLP

By: _____
Patrick P. Salisbury (PS 1226)
1325 Avenue of the Americas
Suite 704
New York, NY 10019
212-977-4660- telephone
212-977-4668- facsimile

Counsel for Plaintiffs, OCCIDENTAL HOTELS MANAGEMENT B.V., OPERADORA INTERCONTINENTAL DE RESORTS & HOTELES, S.A., ALLEGRO PALM BEACH N.V., and HOTEL PLAYACAR, S.A. de C.V.

G:\PS Clients\Occidental Hotels\Westbrook\Motion to Disqualify-PS.doc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OCCIDENTAL HOTELS MANAGEMENT B.V., OPERADORA INTERCONTINENTAL DE RESORTS & HOTELES, S.A., ALLEGRO PALM BEACH N.V., and HOTEL PLAYACAR, S.A. de C.V., <br><br> Plaintiffs, <br><br> vs. <br><br> WESTBROOK ALLEGRO L.L.C., individually and as participation agent, <br><br> Defendant. | ECF CASE <br><br> CASE NO. 05-CV-9547 (LMM) (THK) <br><br> **CERTIFICATE OF SERVICE** |
| WESTBROOK ALLEGRO L.L.C., <br><br> Counterclaimant, <br><br> vs. <br><br> OCCIDENTAL HOTELS MANAGEMENT B.V., <br><br> Counterclaim-Defendant. | |

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically on this 9th day of March, 2006, to:

> **Robert C. Micheletto, Esq.** [rmicheletto@jonesday.com]
> **Thomas E. Lynch, Esq.** [telynch@jonesday.com]
> **Kelly A. Carrero, Esq.** [kacarrero@jonesday.com]
> Jones Day
> 222 East 41st Street
> New York, NY 10017
> Tel: 212-326-3939
> Fax: 212-755-7306
>
> Counsel for Defendant, WESTBROOK ALLEGRO L.L.C.

_____
Patrick P. Salisbury, Esq.

G:\PS Clients\Occidental Hotels\Westbrook\Motion to Disqualify-PS.doc