```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
OCCIDENTAL HOTELS MANAGEMENT          :
B.V., OPERADORA INTERCONTINENTAL      :
DE RESORTS & HOTELES, S.A., ALLEGRO   :
PALM BEACH N.V., and HOTEL            :
PLAYACAR, S.A. de C.V.,               :
                                      :
                     Plaintiffs,      :  05 Civ. 9547 (LMM)(THK)
                                      :
          -against-                   :
                                      :     MEMORANDUM OPINION
WESTBROOK ALLEGRO L.L.C.,             :        AND ORDER
                                      :
                     Defendant.       :
-----------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/21/06

**THEODORE H. KATZ, United States Magistrate Judge.**

This action for misrepresentation and breach of contract arises out of Westbrook Allegro L.L.C.'s ("Westbrook" or "Defendant") alleged failure to indemnify Occidental Hotels Management B.V. ("Occidental"), Operadora Intercontinental De Resorts & Hoteles, S.A. ("OIH"), Allegro Palm Beach N.V. ("Allegro P.B."), and Hotel Playacar, S.A. de C.V. ("Hotel Playacar") (collectively, "Plaintiffs") for certain costs, expenses, and liabilities Plaintiffs incurred in connection with a merger agreement. The action was referred to this Court by the Hon. Lawrence M. McKenna, U.S.D.J., for general pretrial supervision. Plaintiffs have moved to disqualify Jones Day as counsel for Defendant and to enjoin Kent Richey, Esq. ("Richey") and Jones Day from disclosing Plaintiffs' confidential information. For the following reasons, Plaintiffs' motion is denied.

## BACKGROUND

The following material facts are undisputed unless otherwise indicated. The underlying claims in this action arise out of a corporate transaction in 2000 in which Defendant Westbrook sold a majority of its interest in Allegro Resorts Corporation ("Allegro Resorts") to Plaintiff Occidental. Allegro Resorts merged with a subsidiary of Occidental, which resulted in Allegro Resorts as the surviving corporation. As part of the transaction, Defendant agreed to indemnify Occidental for any damages caused by misrepresentations made by Allegro Resorts in the sale and merger agreement (the "Sale Agreement"). Plaintiffs are seeking to enforce that indemnification provision against Defendant and recover for losses they allegedly suffered as a result of certain misrepresentations.

## I. Richey's Involvement with Westbrook and Allegro Resorts

From 1987 to 1997, Richey was a real estate associate at Cravath, Swaine & Moore, and in that capacity represented the Westbrook entities, including Defendant Westbrook Allegro ("Westbrook"). (See Declaration of Kent R. Richey, dated Apr. 3, 2006 ("Richey Decl."), attached as Exhibit ("Ex.") 2 to Declaration of Thomas E. Lynch in Opposition to Plaintiffs' Motion to Disqualify, dated Apr. 3, 2006 ("Lynch Decl."), ¶¶ 7-8; Declaration of Patrick K. Fox, dated Mar. 31, 2006 ("Fox Decl."), attached as Ex. 3 to Lynch Decl., ¶ 8.)

In a transaction which took place from 1995 to 1997, Defendant Westbrook acquired a majority ownership interest in Allegro Resorts. (See Richey Decl. ¶ 8.) Richey represented Westbrook as outside counsel in this transaction. (See id. ¶ 8; Fox Decl. ¶ 10.) Prior to the close of the transaction, Richey was asked by persons affiliated with Westbrook, including Westbrook Partner's General Counsel, Patrick Fox, to consider employment with Allegro Resorts. (See Richey Decl. ¶ 10; Fox Decl. ¶ 12.) Richey negotiated employment terms with a Vice-President of Westbrook. (See Richey Decl. ¶ 10.) According to Defendant, Richey became the General Counsel of Allegro Resorts in June 1997. (See id. ¶ 11.) In addition to being General Counsel, Richey was a Vice-President of Allegro.

Defendant portrays Richey's position as General Counsel for Allegro Resorts as intimately connected with Westbrook. (See Fox Decl. ¶ 14.) Richey's office was located in the New York office of Westbrook Partners.[1] (See Richey Aff. ¶ 13; Fox Decl. ¶ 13.) Defendant contends that during Richey's tenure as General Counsel, Westbrook had access to all of the confidential information of Allegro Resorts and its subsidiaries. (See Richey Decl. ¶ 19; Fox

---

[1] Defendant Westbrook Allegro is owned by Westbrook Real Estate Fund, II, L.P. and Westbrook Real Estate Co-Investment Partnership II, L.P., which are limited partnerships which have a common general partner, Westbrook Real Estate Partners Management II, L.L.C., which in turn, is wholly owned by Westbrook Partners. (See Richey Decl. ¶ 9.)

3

Decl. ¶ 15.) For example, Richey routinely briefed Westbrook officers, who were also members of Allegro Resorts's Board of Directors, on Allegro Resorts's business operations. (See id. Richey Decl. 20-21; Fox. Decl. ¶ 17.) When legal matters arose involving Allegro Resorts and its subsidiaries, Richey involved Westbrook Partners' General Counsel, Fox, who was responsible for overseeing the legal affairs of various Westbrook entities, including Defendant Westbrook Allegro. (See id. ¶ 21; Fox Decl. ¶¶ 7, 17.)[2]

Plaintiffs emphasize, and Defendant does not deny, that Richey was also an officer and a member of the Board of Directors of Plaintiffs OIH, Allegro P.B., and Hotel Playacar, which are wholly-owned subsidiaries of Allegro Resorts. (See Pls.' Mem. at 3, 6; Alvarez Decl. ¶ 3.)

II. Occidental's Purchase of Allegro Resorts

In 2000, Westbrook sold its stock in Allegro Resorts to

---

[2] Plaintiffs allege that Richey was the General Counsel of Allegro Resort Corporation, which Plaintiffs abbreviate as "ARC," rather than Allegro Resorts. (See Memorandum of Law in Support of Plaintiffs' Motion to Disqualify, dated Mar. 8, 2006 ("Pls.' Mem."), at 1; Declaration of Claudia Alvarez, Mar. 8, 2006 ("Alvarez Decl."), attached to Pls.' Mem., ¶ 3.) Plaintiffs describe ARC as the parent company of the Allegro Group, and contend that it was the Allegro Group that was sold to Occidental in the 2000 transaction. (See Pls.' Mem. at 3.) Since Defendant admits that Plaintiffs OIH, Allegro P.B., and Hotel Playacar, are wholly-owned subsidiaries of Allegro Resorts (see Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Disqualify, dated Apr. 3, 2006 ("Def.'s Mem."), at 3; Fox Decl. ¶ 14), the Court does not find the distinction the parties draw between ARC and Allegro Resorts material to its analysis.

4

Occidental. (See Richey Aff. ¶ 24; Fox. Decl. ¶ 19.) The transaction resulted in a merger of Allegro Resorts with a wholly-owned Occidental subsidiary, with the new entity retaining the Allegro Resorts name. (See Richey Decl. ¶ 25.) After the transaction closed, Allegro Resorts operated with a new Board of Directors, most of the non-hotel management personnel changed, and its operations were folded into Occidental's resort management business. (See Def.'s Mem. at 7 n.6.)

According to Defendant, early in the transaction, Richey acted as inside counsel for both Westbrook and Allegro Resorts in connection with the sale of Allegro Resorts to Occidental. (See id. at 6; Richey Decl. ¶ 30; Fox. Decl. ¶ 22.) The same outside counsel represented both Westbrook and Allegro Resorts in the transaction. (See Richey Decl. at 30; Fox Decl. ¶ 21.) In his capacity as "inside" counsel, Richey participated in the due diligence, negotiation, drafting and execution of various transaction documents, including the Sale Agreement. (See Richey Decl. ¶ 31.) Richey consulted frequently with both outside counsel and Westbrook Partners' General Counsel about the deal. (See id.; Fox Decl. ¶ 22.) The Sale Agreement was dated April 17, 2000. Effective April 29, 2000, Richey resigned as General Counsel for Allegro Resorts. (See Richey Decl. ¶ 33.) Pursuant to a severance agreement, Richey continued to consult on a part-time basis in connection with the transaction, providing legal advice to

Westbrook and Allegro Resorts. (See Richey Decl. ¶¶ 33-34.) The transaction eventually closed in September 2000.

Plaintiffs characterize Richey as representing Allegro Resorts in connection with the merger, but do not address Defendant's contention that Richey represented Westbrook during the merger. Plaintiffs to not dispute Defendant's description of the role Richey played with respect to the merger.

III. Westbrook's Alleged Breaches

In this action, Plaintiffs allege that Westbrook breached several of the representations and warranties in the Sale Agreement relating to Allegro Resorts. Plaintiffs are thus seeking indemnification for losses arising out of those matters.

The primary basis for the current motion to disqualify Jones Day as Defendant's counsel is Plaintiffs' contention that Richey was personally involved in each of these matters while Allegro Resorts's General Counsel. (See Pls.' Mem. at 2, 4-6; Alvarez Decl. ¶ 5.) Defendant does not deny this. As a result of Richey's involvement in these matters, Plaintiffs allege that he had access to privileged and confidential information. (See Pls.' Mem. at 5-6.) Plaintiffs also contend that Richey will be a critical witness in this case regarding these privileged matters. (See id. at 3.) Plaintiffs further maintain that Richey will be a critical witness regarding the Sale Agreement, because he was intimately involved in the due diligence and negotiation of the merger. (See Pls.' Mem. at

3; Alvarez Decl. ¶ 7.)

A. The Allegro P.B. Casino Claim

Plaintiffs' first claim for indemnification involves Allegro P.B.'s June 2000 termination of a casino management contract (the "Casino Claim"). Plaintiffs contend that Richey personally negotiated and signed the casino management contract on behalf of Allegro P.B., and that he handled disputes that subsequently arose under the contract. (See Pls.' Mem. at 4; Alvarez Decl. ¶ 8.) Plaintiffs also allege that Richey was involved in the termination of the casino contract. (See Pls.' Mem. at 4; Alvarez Decl. ¶ 9.) According to Plaintiffs, the termination of the contract resulted in litigation being initiated against Allegro P.B. in Aruba, Florida, and Texas. (See Pls.' Mem. at 2, 5; Alvarez Decl. ¶ 9.) Richey testified in the Texas action, in which a decision was rendered against the casino operator. (See Pls.' Mem. at 5.) Plaintiffs seek in excess of $600,000 related to the termination of the contract. (See Pls.' Mem. at 2.)

B. The OIH Assault Claim

Another basis for Plaintiffs' request for indemnification relates to the alleged sexual assault of a guest by an employee of one of Plaintiff OIH's hotels in October 1999 (the "Assault Claim"). (See Pls.' Mem. at 5; Alvarez Decl. ¶ 11.) Plaintiffs allege that Richey supervised the investigation of the guest's suit, and was involved in the defense of the suit, instructing

outside counsel on the matter, until September 2000. (See id.) The civil suit was eventually settled for $400,000, for which Plaintiffs are seeking indemnification. (See Pls.' Mem. at 2.)

C. The Hotel Playacar Injury Claim

Finally, Plaintiffs seek indemnification for a $130,000 settlement paid by Plaintiff Hotel Playacar to a guest who was injured at a resort in Mexico (the "Injury Claim"). (See Pls.' Mem. at 2.) The incident underlying the Injury Claim occurred on July 29, 2000, several months after Richey had resigned, but prior to the close of the merger. (See Pls.' Mem. at 6; Alvarez Decl. ¶ 12.) Plaintiffs contend that by continuing to represent Allegro Resorts in the merger until September 2000, Richey had knowledge of confidential and privileged information related to the Injury Claim.

IV. Post-Transaction

Defendant maintains that Plaintiff Occidental began demanding indemnification for the Casino Claim in July 2000, even before the transaction closed. (See Def.'s Mem. 8; Richey Decl. ¶ 43.) In the intervening five years, Occidental continued to send indemnification notices on this claim, but Defendant points out that it never received a notice from any of the other named Plaintiffs, which are Allegro Resorts's subsidiaries. (See Richey Decl. ¶ 38.)

Defendant contends that between September 2000 and November

8

2005, Richey, as outside counsel for Westbrook, had numerous discussions with individuals at Westbrook and provided legal advice regarding the merits of the Casino Claim. (See Richey Decl. ¶ 43.)[3] During this time, Richey also communicated directly with Occidental's in-house counsel with regard to the Casino Claim. (See id.)

On July 26, 2005, Occidental sent an indemnification notice to Westbrook for the Assault Claim, and sent a copy to Richey's attention at Westbrook Partners. (See Richey Decl. ¶ 45; Indemnification Claim Notice, dated July 26, 2005, attached as Ex. 35 to Lynch Decl.) As with the Casino Claim, Richey provided legal advise to Westbrook with regard to this claim. (See Richey Decl. ¶ 45.) In addition, according to Defendant, Occidental involved Richey in numerous other communications relating to other indemnification claims, and in extensive settlement discussions in 2002 and 2003 aimed at resolving Occidental's indemnification claims. (See Def.'s Mem. at 10; Richey Decl. ¶¶ 46-52.) Richey participated in the settlement discussions as counsel for the Westbrook sellers. (See Richey Decl. ¶ 48.)

Defendant stresses that during this five-year, post-

---

[3] Following the closing of the transaction, Richey accepted employment with O'Connor Capital Partners. (See Richey Decl. ¶ 34.) In 2001, Richey returned to Cravath, Swaine & Moore as a senior associate. (See id. ¶ 35.) In 2004, Richey joined Jones Day, where he is presently a Real Estate partner. (See id.; Def.'s Mem. at 23.)

transaction period, Plaintiffs have never objected to Richey's representation of Westbrook, either in relation to the Casino Claim and Assault Claim, or in connection with the settlement discussions. (<u>See</u> Def.'s Mem. at 9-11.)  In fact, Defendant emphasizes that even after filing the present motion to disqualify, Occidental has continued to involve Richey in matters relating to the indemnification claims, by addressing indemnification-related communications to Richey. (<u>See</u> Def.'s Mem. at 11; Richey Decl. ¶ 53; E-mail for Joaquin Giraldez to Kent Richey, dated Mar. 23, 2006, attached as Ex. 37 to Lynch Decl.)

Plaintiffs now seek to disqualify Jones Day from representing Defendant based on Richey's prior representation of Allegro Resorts, and his position as an officer and board member of Plaintiffs Allegro P.B., OIH, and Hotel Playacar.  By "switching sides" and representing Westbrook in the present litigation, Plaintiffs contend that Richey will make Plaintiffs' confidential information available to Defendant.  Plaintiffs also argue that Jones Day must be disqualified from representing Westbrook under the "lawyer as witness rule."  Plaintiffs' ground their arguments for the disqualification of Jones Day on the advocate-witness rule in New York case law and disciplinary rules.

In opposition to Plaintiffs' motion, Defendant first argues that Plaintiffs could not have reasonably expected Richey to withhold information about Allegro Resorts from Westbrook.

Defendant also maintains that even if Allegro Resorts's information should be kept confidential from Westbrook, Plaintiffs cannot meet the heavy burden of the Second Circuit's "substantial relationship test" for disqualification. Further, Defendant argues that even if Richey is called as a witness, Jones Day's defense of the case would not violate the advocate-witness rule. Defendant points out that Richey has not made an appearance in the case, and will not be counsel for Westbrook at trial, since Richey is a real estate attorney, not a litigator.

## DISCUSSION

I.  Legal Standards

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc., v. Inc. Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted). "In a technical sense the only truly binding authority on disqualification issues is [Second] Circuit precedent, because our authority to disqualify an attorney stems from the Court's inherent supervisory authority." Skidmore v. Warburg Dillon Read LLC, No. 99 Civ. 10525 (NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001). Although disqualification motions within the Second Circuit often look to state disciplinary rules for guidance, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video,

409 F.3d at 132.

A federal court's decision of whether to disqualify counsel "must ultimately be guided by the goal of a trial process that lacks any hint of a taint." Skidmore, 2001 WL 504876, at *2. With rare exceptions, disqualification is generally ordered in two kinds of cases. See Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). First, where an attorney's conflict of interest in violation of Code of Professional Responsibility Canons 5 and 9 undermines the court's confidence in the attorney's representation of his client.[4] See id. Second, where the attorney is, at least potentially, in a position to use privileged information gained from the other side through prior representation, giving the present client an unfair advantage. See id. "[U]nless an attorney's conduct tends to taint the underlying trial by disturbing the balance of the presentations in one of the two ways indicated above, courts should be quite hesitant to disqualify an attorney." Nyquist, 590 F.2d at 1246 (internal quotation marks and citation omitted).

Motions for disqualification require a high standard of proof on the part of the party seeking to disqualify former counsel. See Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983).

---

[1] Canons 5 and 9 provide that a lawyer should exercise independent judgment on behalf of his client, and should avoid the appearance of professional impropriety. See Nyquist, 590 F.2d at 1246.

12

Disqualification motions are often brought for tactical reasons, and even when made in good faith, delay litigation. See id. at 791-92. In evaluating motions to disqualify counsel, a federal court balances a client's right to freely choose his counsel against the need to maintain the standards of the legal profession. See id. at 791 (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978)).

II.  Richey's Access to Allegro Resorts Confidential Information

The form of taint primarily alleged by Plaintiffs is that Richey will knowingly reveal Allegro Resorts's privileged information to the disadvantage of Plaintiffs, with Plaintiffs presumably positioning themselves as aligned with Allegro Resorts. Under New York law, an attorney may be disqualified from representing a client in a particular case if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Hempstead Video, 409 F.3d at 133; see also Evans, 715 F.2d at 791 (same). Thus, an attorney may be disqualified from representing a client if the attorney has accepted employment adverse to the interests of a former client on a matter substantially related to a prior litigation. See Bass Pub. Ltd., Co. v. Promus Cos. Inc., No. 92 Civ. 0969 (SWK), 1994 WL 9680, at *4 (Jan. 10, 1994

13

S.D.N.Y.).[5]

However, before the substantial relationship test is even implicated, Plaintiffs must make a showing that the challenged "attorney was in a position where he could have received information which his former client might have reasonably assumed the attorney would keep from his present client." Allegaert v. Perot, 565 F.2d 246, 250 (2d Cir. 1977); see also Russell-Stanley, 210 F. Supp. 2d at 397 (same); Rocchigiani v. World Boxing Counsel, 82 F. Supp. 2d 182, 187 (S.D.N.Y. 2000) (same). If there was no expectation that information would have been kept confidential from the attorney's present client, the substantial relationship test is inapposite. See Allegaert, 565 F.2d at 250. This may occur where an attorney's prior representation involved a former, but now adverse, client and a present, long-standing primary client. Where the attorney who is the target of the disqualification motion continues to represent the primary client, the substantial relationship test may not be triggered because, "[u]nlike the typical situation giving rise to a disqualification motion of this sort, it is a client, not an attorney, who has 'changed sides.'" Bass Pub. Ltd., 1994 WL 9680, at *5 (citation omitted).

---

[5] As emphasized above, it does not necessarily follow that courts should disqualify counsel wherever they perceive a breach of the Code of Professional Responsibility - the key inquiry is whether the violation gives rise to a significant risk of taint. See Russell-Stanley Holdings Inc. v. Buonanno, 210 F. Supp 2d 395, 397 (S.D.N.Y. 2002).

14

On facts very similar to those at issue at in this case, the court in Bass concluded that disqualification was not warranted because it was the client, rather than the attorneys, who switched sides after the attorneys had simultaneously represented two clients. See Bass Pub. Ltd., 1994 WL 9680, at *7. In Bass, the Holiday Corp. sold its Holiday Inn hotel business to Bass Public Limited Co. under a merger agreement. To effectuate the transaction, Holiday formed Promus, a wholly owned subsidiary, into which all of Holiday's non-Holiday Inn business was transferred. The merger agreement was signed by Holiday, Promus, and Bass. Under the merger agreement's representations and warranties, Promus alone was liable for, and post-merger Holiday was absolved of, any liability under the agreement's representations and warranties. Post-merger, Holiday had a new board of directors, new top management, and a new corporate headquarters. Latham & Watkins had represented pre-merger Holiday in various transactions, represented pre-merger Holiday and Promus as seller during the merger, and then continued to represent Promus in merger-related disputes with Bass. For two years post-merger, Latham & Watkins represented Promus in these matters without objection from Bass or post-merger Holiday. Bass and post-merger Holiday then brought suit against Promus for breaches of the merger agreement's representations and warranties, and moved to disqualify Latham & Watkins from representing Promus on the basis that Latham & Watkin's representation of Promus

15

threatened to breach Holiday's confidences.  See id. at *1-6.

The Bass court denied the motion to disqualify.  It noted that Latham & Watkins was being called upon to defend - not attack - Holiday's pre-merger representations and actions. See id. at *7. Thus, the court concluded that the law firm was not using the confidences of its former client to the former clients disadvantage. See id.  The court emphasized that the likelihood that the seller, Promus, would be privy to communications between pre-merger Holiday and Latham & Watkins was underscored by the express provisions in the merger agreement, and the fact that in negotiating the merger, the firm worked with officers from pre-merger Holiday, whom the parties knew would become key personnel at Promus. See id. at *8.  The court concluded that "[a]s a result of the close supervision exercised by pre-merger Holiday's law department, Latham & Watkins possesses no information from its pre-merger representation of Holiday relevant to this litigation that is not already known by Promus." Id.

This Court reaches the same conclusion.  Disqualifying Richey would not serve the purpose of protecting a former client's expectation of loyalty and confidentiality.  It is Allegro Resorts and its subsidiaries, rather than Richey, that have changed positions from alignment with Westbrook to alignment with Occidental.  Richey represented Westbrook while at Cravath, prior to joining Allegro Resorts as General Counsel. (See Richey Decl. ¶¶

7-8; Fox Decl. ¶ 8.) During the merger, Richey negotiated on behalf of pre-merger Allegro Resorts and Westbrook as seller. Post-merger, Richey resigned his position with post-merger Allegro Resorts. Subsequently, Richey has continued to represent Westbrook in the numerous indemnification-related disputes with Occidental. Richey has consistently represented Westbrook-aligned interests, including pre-merger Allegro Resorts, and pre- and post-merger Westbrook sellers. Occidental has clearly understood that Richey was aligned with the seller and that, in any dispute arising out of the merger, Richey would continue to be associated with Westbrook. Jones Day's representation of Westbrook in this litigation is consistent with Richey's prior representation.[6]

Moreover, given the circumstances of the merger, and the practical reality of the transaction, it is difficult to see how Plaintiffs reasonably could have expected Richey to have kept any information related to the merger, Sale Agreement, or claims against Allegro Resorts confidential from Westbrook. Richey, as General Counsel for Allegro Resorts, worked closely with

---

[6] Following Plaintiffs' argument that Occidental is Richey's former client would lead to Occidental suing Westbrook in this action for misrepresentations made by Occidental's related entities. The flaw in this logic is that for Richey to be loyal to his former client, Occidental, he would have to argue that his former client made the misrepresentations at issue in this case. Rather, Richey's current posture in the litigation, as aligned with Westbrook, puts Richey in the position of defending his former client, because the interest his firm represents is maintaining that pre-merger Allegro Resorts did not make the misrepresentations at issue.

17

Westbrook's General Counsel on the transaction, since Westbrook was selling its interest in Allegro Resorts. (See Def.'s Mem. at 6; Richey Decl. ¶ 30; Fox. Decl. ¶ 22.)  The same outside counsel represented Westbrook and Allegro Resorts during the deal. (See Richey Decl. at 30; Fox Decl. ¶ 21.)  Richey participated in the due diligence, negotiation, drafting, and execution of various transaction documents, including the Sale Agreement, on behalf of Westbrook as seller and Allegro Resorts, the entity being sold. (See Richey Decl. ¶ 31.)  Once the Sale Agreement was signed in April 2000, Richey continued to provide legal advice to Westbrook and Allegro Resorts as a consultant in connection with the transaction.  (See Richey Decl. ¶¶ 33-34.)

Further, Plaintiffs' indemnification claims in the present suit arise out of the representations and warranties made by Westbrook in the Sale Agreement as to Allegro Resorts's and its subsidiaries' liabilities. As pre-merger Allegro Resorts's parent company and then seller, Westbrook would have been made aware of the claims against Allegro Resorts in order to assess liability pre-merger, and would have been briefed by Richey on the intricacies of the claims within the context of the merger.[7]

---

[7] Plaintiffs' purported concern with protecting their confidential information is further belied by the fact that they have been aware of Richey's position representing Westbrook for approximately five years, and have dealt with him in that capacity regarding their indemnification claims prior to bringing this litigation.  Plaintiffs' delay in bringing this disqualification motion strongly suggests an expectation and

Plaintiffs rely primarily on Tekni-Plex, Inc. v. Meyner and Landis, 89 N.Y.2d 1231, 674 N.Y.S. 2d 954 (1996) to support their motion to disqualify. In Tekni-Plex, the law firm Meyner and Landis ("M&L") had represented Tekni-Plex for years on various matters, including environmental compliance. During most of that time, the company had eighteen shareholders, none of whom were represented by M&L in connection with the environmental compliance matters. Two years after an individual shareholder, Tang, became sole shareholder, M&L represented Tang as seller, and Tekni-Plex, in the merger of the company with Acquisition. After the merger, the post-merger Tekni-Plex brought an arbitration proceeding against Tang, claiming that he had breached representations and warranties regarding Tekni-Plex's compliance with environmental laws. See id. at 127-29, 651 N.Y.S.2d at 956-57.

The Court of Appeals disqualified M&L from representing Tang in the lawsuit which grew out of the transaction. The court found that the confidential information M&L learned while representing Tekni-Plex in environmental compliance matters was relevant to the arbitration, and that this confidential information belonged exclusively to Tekni-Plex. See id. at 136, 651 N.Y.S.2d at 671. Because Tang had not been a co-client with regard to the environmental compliance matters, the court held that M&L should be

---

recognition that Richey would share Allegro's so-called "confidential information" with Westbrook, in order to address Occidental's claims.

disqualified to prevent the law firm from improperly using the company's confidential information for Tang's benefit. See id. The court noted that the analysis would be different if Tang and the company had been co-clients during the environmental representation, so that confidences concerning environmental matters had been shared between them. See id.

In the present case, however, confidences were shared between Westbrook and Allegro Resorts throughout Richey's representation. Richey, during the transactions underlying the indemnification claims, and particularly in the context of the merger, fully briefed Westbrook on Allegro Resorts confidential information relating to Allegro Resorts's potential liabilities, including the claims at issue here. See id. Therefore, the Court finds Plaintiffs' reliance on Tekni-Plex inapposite.

Plaintiffs' Reply Memorandum also focuses on a recent bankruptcy court opinion, In re I Successor Corp., 321 B.R. 640 (Bankr. S.D.N.Y. 2005), to argue that even if Richey did not keep Allegro's confidential information from Westbrook, his duty of loyalty to Allegro Resorts is enough to serve as a basis for disqualification. (See Plaintiffs' Memorandum of Law in Reply to Defendant's Opposition to Plaintiffs' Motion to Disqualify, dated Apr. 18, 2006 ("Pls.' Reply Mem."), at 1-2.) The Court does not find this case persuasive. As the In re I Successor Corp. court itself noted, the case did not involve a merger or sale of assets.

Rather, the holding is limited to the specific situation of a former counsel of a now-bankrupt corporation seeking to represent an officer or director against his former client, the corporation. The In re I Successor Corp. court specifically differentiated the duty of loyalty analysis in the transactional context.

> The law firm in such circumstances is very differently situated than the law firm that continues to represent the same party after a joint representation . . . [N]ot only is confidentiality not a concern but also loyalty is not a concern since the law firm continues to represent its pre-existing, primary client after the joint representation ends. Any representation of the now opposing party was done with the consent of that opposing party with knowledge that the firm would continue to represent its primary client's interests thereafter.

See id. Jones Day and Richey's present representation does not implicate a duty of loyalty concern, or raise the same specter of side-switching.

Under the circumstances, the Court concludes that disqualification is unnecessary to protect against the misuse of privileged information, because Westbrook had access to Allegro Resorts confidential information prior to and during the merger. Cf. Russell-Stanley, 210 F. Supp.2d at 398 (denying motion to disqualify law firm, and finding that plaintiff-buyer could not have reasonably expected that attorney-client information concerning merged-company would not have been shared between merged-company and seller pre-merger); Bass Pub. Ltd., 1994 WL 9680, at *7 (denying motion to disqualify firm, which represented pre-merger company and seller during merger, and then represented

21

seller in post-merger disputes, and finding there could be no expectation that the merged-entity's information would have been kept confidential from seller).

B. Richey as a Key Witness

Plaintiffs also contend that Richey and Jones Day's disqualification is required under the advocate-witness rule. (See Pls.' Mem. at 13.) Plaintiffs base their argument on the New York Code of Professional Responsibility's Disciplinary Rules (the "New York Code") 5-102(a) and 5-102(b). See 22 NYCRR §§ 1200.21(a) and (b).[8]

The first basis for Plaintiffs' motion is New York Disciplinary Rule 5-102(a), which provides,

A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client.

---

[8] When ruling on disqualification motions, courts in this circuit have considered both the New York Code as well as pronouncements by the American Bar Association (the "ABA"). See Fields-D'Arpino v. Rest. Assocs., Inc., 39 F. Supp. 2d 412, 414 n.2 (S.D.N.Y. 2002). The language of the advocate-witness rule varies markedly between the ABA's Model Code of Professional Responsibility (the "Model Code"), the ABA's Model Rules of Professional Conduct (the "Model Rules"), and the New York Code. Although not bound by the New York Code and aware of that the "Second Circuit in particular has repeatedly indicated that [the New York disciplinary rules] need not be rigidly applied," Renner v. Townsend Fin. Servs. Corp., No. 98 Civ. 926 (CSH), 2002 WL 1013234, at *6 (S.D.N.Y. May 20, 2002), the Court's analysis addresses the New York Code's Disciplinary Rule addressing "lawyers as witnesses." Moreover, both sides have argued the motion applying the New York Code.

22 NYCRR § 1200.21(a). "An earlier version of 5-102(a) required disqualification of both an attorney and his firm if the attorney should be called as a witness for the client; however . . . DR 5-102(a) 'now permits a law firm to continue representation of a client even if one attorney of the firm is required to testify.'" Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2002 WL 87665, at *1 (S.D.N.Y. Jan 22, 2002) (citation omitted).

Plaintiffs insist that Richey will be a key witness of fact with respect to Plaintiffs' claims for indemnification, and thus should be disqualified under D.R. 5-102(a). (See Pls.'s Mem. at 13.) Defendant stresses that Richey has not made an appearance in this action. (See Def.'s Mem. at 23.) Further, as a real estate attorney, as opposed to a litigator, he will not be counsel for Defendant at trial. (See id.)

The plain language of D.R. 5-102(a) applies to attorneys intending to act as "an advocate on issues of fact before any tribunal." Defendant has indicated that Richey will not serve as trial counsel. Moreover, Plaintiffs do not contend that any other member of Jones Day will be a witness at trial. Therefore, Plaintiffs' argument for Richey's disqualification based on D.R. 5-102(a) is without merit. See Chase Manhattan Bank, 2002 WL 87665, at *1 (noting that disqualification was not appropriate under DR 5-102(a) where attorney-witness was a corporate attorney, and the case at bar would be handled by attorneys from the firm's

23

litigation department); <u>Culver v. Merrill Lynch & Co.</u>, No. 94 Civ. 8124 (LBS), 1997 WL 223088, at *3 (S.D.N.Y. May 5, 1997) (denying motion to disqualify attorney under D.R. 5-102(a), noting "[t]he Court need not reach the question of whether [the attorney] 'ought to be' called as a witness . . ." because the attorney's firm indicated he would no longer service as trial counsel).

Second, Plaintiffs argue that Jones Day must be vicariously disqualified under D.R. 5-102(b), because Richey will give testimony adverse to Defendant. New York Disciplinary Rule 5-102(b) provides,

> Neither a lawyer nor the lawyer's firm shall accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or another lawyer in the lawyer's firm may be called as a witness on a significant issue other than on behalf of the client, and *it is apparent that the testimony would or might be prejudicial to the client.*

22 NYCRR § 1200.21(b) (emphasis added). This rule comes into play where a lawyer's testimony would contradict or undermine his client's factual assertions. See <u>Lamborn v. Dittmer</u>, 873 F.2d 522, 531 (2d. Cir. 1989); <u>GPA Inc. v. Liggett Group, Inc.</u>, No. 94 Civ. 5735 (AGS), 1994 WL 613267, at *2 (S.D.N.Y. Nov. 4, 1994).

"[M]otions to disqualify counsel [] are subject to fairly strict scrutiny, particularly motions under subdivision [(b)]." <u>Lamborn</u>, 873 F.2d at 531; <u>see also</u> <u>Apr. Broadcasting, Inc. v. Smith</u>, No. 95 Civ. 7664, 1996 WL 137487, at *5 (S.D.N.Y. Mar. 27, 1996). This is because a motion under D.R. 5-102(b) "seeks to

call an advocate as a witness against the interest of the advocate's client." Townsend Fin. Servs., 2002 WL 1013234, at *6.

It is clear that Richey "may be called as a witness on a significant issue" in this litigation. Plaintiffs emphasize that Richey was Allegro Resorts's General Counsel during the time period relevant to the three underlying claims. In their Reply, Plaintiffs specify that Richey negotiated the contract at issue in the Casino Claim, and made the decision to terminate the contract. (See Pls.' Reply Mem. at 9.) Plaintiffs also maintain that Richey handled the litigation underlying the Assault Claim. (Id.) Further, Richey played a central role in the negotiation of the merger on behalf of Allegro Resorts and Westbrook as seller. Defendant does not dispute Richey's central role as a witness in this action.

Therefore, whether Plaintiffs' motion for disqualification under D.R. 5-102(b) has merit turns on whether Richey's "testimony would or might be prejudicial to" Defendant. For testimony to be prejudicial, "the 'projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." Lamborn, 873 F.2d at 531 (citation omitted). "[T]he moving party 'bears the burden of demonstrating specifically how and as to what issues in the case the prejudice

25

may occur and that the likelihood of prejudice occurring is substantial.'" Id. Although courts in this Circuit have stated that simply showing that the testimony is prejudicial is not sufficient, any doubts should be resolved in favor of disqualification. See Townsend Fin. Servs., 2002 WL 1013234, at *6 (citing Tibsy v. Buffalo Gen. Hosp., 157 F.R.D. 157, 166 (W.D.N.Y. 1994)).

With respect to the Casino Claim, Plaintiffs contend that Richey's testimony will be prejudicial to Westbrook, because his testimony will establish that Allegro Resorts terminated the contract in violation of the Sale Agreement. (See Pls.' Mem. at 14.) Defendant argues that even if Richey is called as a witness, Jones Day may continue to represent Westbrook because Plaintiffs cannot meet their burden of showing that Richey's testimony will be adverse to Westbrook. (See Def.'s Mem. at 23.)

Based on the arguments and affidavits offered by the parties, the Court is not convinced at this juncture that Richey's testimony would be significantly inconsistent with Westbrook's position. Richey has yet to submit to a deposition in the case, rendering Plaintiffs' assertions about his testimony wholly speculative. Cf. Chase Manhattan Bank, 2002 WL 87665, at *3 (delaying decision on motion to disqualify until after the attorney-witness had submitted to deposition).

Finally, the Court notes that vicarious disqualification of

law firms under the advocate-witness rule is discretionary, because the New York Code is not legally binding on federal courts. See Gandler v. Nazarov, No. 94 Civ. 2272 (CSH), 1994 WL 702004, at *1 (S.D.N.Y. Dec. 14, 1994). "The Southern District has held that vicarious disqualification of an entire firm is not necessary when an individual attorney is disqualified under DR 5-102[a] . . . [T]he same rationale [applies] to this case, arising under DR 5-102[b]." Apr. Broadcasting, 1996 WL 137487, at *5. Given that Richey is a transactional attorney, who will not be involved in the defense of this action, the Court is disinclined to disqualify the entire Jones Day firm should Richey's testimony prove adverse to the factual assertions advanced by Defendant. Cf. Apr. Broadcasting, 1996 WL 137487, at *5 (stating that the court would not disqualify witness-advocate's firm under DR 5-102(b) should attorney be disqualified under the advocate-witness rule).

Accordingly, Plaintiffs' motion for disqualification based on the advocate-witness rule is denied. Should circumstances change, Plaintiffs are free to renew their motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to disqualify Jones Day as counsel, and to enjoin Richey and Jones Day from disclosing Plaintiffs' confidential information is denied.

So Ordered.

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:    July 21, 2006
          New York, New York

28